Hawkes, Appellant, *v.* Unemployment
Compensation Board of Review.

466

Argued April 17, 1941.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Rhodes, Hirt and Kenworthey, JJ.

*Richard P. Lott,* for appellant.

*R. Carlyle Fee,* Assistant Special Deputy Attorney General, with him *Charles R. Davis,* Special Deputy Attorney General, and *Claude T. Reno,* Attorney General, for appellee.

OPINION BY CUNNINGHAM, J., July 18, 1941:

This appeal is by William P. Hawkes from a decision of the Unemployment Compensation Board of Review, sustaining the action of the Secretary of Labor and Industry in dismissing him from his employment as Branch Office Manager in the Warren office of the Bureau of Employment and Unemployment Compensation, upon the ground, as charged by the Secretary and sustained by the board, that he had been guilty of delinquency and misconduct in the performance of his duties in that he coerced civil service employees under his management "to engage in political activity and to pay assessments on a percentage basis from their salary, received as civil service employees, to a political organization, and in that he used his office to further the interest of a political party thereby prejudicing the discipline and efficiency of the administration of the Unemployment Compensation Law."

Under the provisions of the "Unemployment Compensation Law" of December 5, 1936, Second Ex. Sess., 1936, P. L. (1937) 2897, as amended by the Acts of May 18, 1937, P. L. 658, June 20, 1939, P. L. 458, and May 16, 1940, Act No. 9, Hawkes was provisionally appointed to the above position on December 13, 1937. After the list of eligibles had been certified as provided by the statute he was regularly appointed a civil service employee on August 1, 1938, and entered upon his probationary period of nine months, as provided in Section 208 (k), 43 PS §768. On December 15, 1939, his certificate as a permanent appointee was issued to him.

Hawkes served continuously as a civil service employee in his position as Branch Office Manager in Warren until March 15, 1940, the date of his dismissal. From the Secretary's order of dismissal he appealed to the Unemployment Compensation Board of Review; formal hearings were had before it, at which 257 printed

pages of testimony were taken; its decision was rendered May 10, 1940, and this appeal followed.

Before considering the evidence, the findings of fact and conclusion of law of the board, reference should be made to the applicable provisions of the statute. The fundamental purpose of the act, as declared in its title, is the establishment of "a system of unemployment compensation to be administered by the Department of Labor and Industry ...... with personnel ...... selected on a civil service basis." Persons desiring employment under its provisions are required to file applications with the board setting forth their qualifications, etc., and it is expressly provided in Section 208 (f), 43 PS §768, that "in no case shall the board require of the applicant any information pertaining to his race, creed, color, or *political affiliations."* By Section 207 (e), 43 PS §767, it is enacted that the Department of Labor and Industry "may afford reasonable cooperation with every agency of the United States charged with the administration of any unemployment insurance law." Among other specifications of the Personnel Standards of the United States Employment Service is one requiring "each officer and employee of the State Employment Service, in his official capacity, to be scrupulously *nonpartisan."* (Italics supplied.)

Among other grounds for summary dismissal of employees it is provided in Section 208 (o) that the Secretary may "dismiss any employee of the department engaged in the administration of this act for delinquency or misconduct in his or her duties under this act".

The political campaign during which the incidents forming the basis of the Secretary's charges of delinquency and misconduct upon the part of appellant occurred was the gubernatorial campaign of 1938, and the period of time with which we are particularly concerned in this case began August 1, 1938, the date upon which appellant became a civil service employee subject to

all the provisions of the statute, and ended with the November election of that year. The material findings of fact of the board read:

"3. During the political campaign in the fall of 1938, the appellant handed to at least three employees in subordinate positions under him, twenty-five postal cards each, requesting them to address same and write thereon appropriate words in their own language urging the addressees to vote the Democratic ticket.

"4. The appellant directed one D. W. Levine, an employee in said office in a subordinate capacity under appellant, to collect contributions for the Warren County Democratic Committee from employees in said office. Receipts were given to the contributors signed 'Warren County Democratic Committee, W. P. Hawkes, by D. W. L.' (D. W. L. being the initials of D. W. Levine, the person appointed to collect said contributions). Money collected by Mr. Levine was turned over to appellant. After August 1, 1938, the date of appellant's appointment under civil service, appellant directed Mr. Levine to sign the receipts 'Warren County Democratic Committee by Ross Porter' and to turn over the money collected directly to the Warren County Democratic Committee.

"5. The appellant either instructed or knowingly permitted employees of said office to prepare, enclose and seal political literature in the interest of the candidate for the legislature." Upon these findings the board based its conclusion of law that appellant "was legally and properly dismissed from his position."

By Section 510, 43 PS §830, regulating appeals to this court, it is provided that in any appeal "the findings of the board ...... as to the facts, if supported by the evidence, and in the absence of fraud, shall be conclusive": *Force v. Unemployment Compensation Board of Review*, 143 Pa. Superior Ct. 20, 18 A. 2d 81. Our examination of the record has convinced us that the

above quoted findings by the board are supported by competent and substantial evidence. Indeed, the admissions made by appellant in the course of his testimony, in and of themselves, furnish a substantial basis for the findings of the board. As to the third finding, appellant testified that about one hundred blank postal cards were brought to his office from the County Democratic Committee Headquarters which he distributed to the employees under him with the suggestion that they should address the cards to voters and write on the back of each a plea in the interest of the Democratic ticket. Relative to the fourth finding, based upon the collection of 3% out of each semi-monthly payment of salary to employees receiving less than $1200 annually, and 5% from those receiving a higher salary, as contributions to the County Democratic Committee for political purposes, appellant admitted he was approached by officials of that committee in January, 1938, while he was serving as a provisional employee and arrangements were then made to have D. W. Levine, a subordinate, attend to the collection of these assessments out of the salary of each person employed in the office and turn the money over to appellant, who in turn paid it to the County Democratic Committee. Prior to August 1, 1938, when appellant became a regular civil service employee, the receipts were signed as stated in the finding. Appellant admitted he instructed Levine that subsequent to his (appellant's) appointment under civil service his name was no longer to be signed to the receipts and that the money collected thereafter should be turned over directly to the County Democratic Committee. The purpose of the change in method is apparent; its making is indicative of appellant's consciousness of the impropriety of the collection of such assessments.

We are in accord with the following excerpt from the opinion of the board supporting its findings: "In the

opinion of the board there is no tenable defense in the argument that since this was done in the form of a 'suggestion' rather than 'demand' there was no coercion. It seems to the board that any 'suggestion' made by a manager of an office to employees working under him would unquestionably be considered by most or all of those affected as being actually a demand. Certainly every employee in any office knows that his retention or promotion depends in some degree at least on the good will of his superior officers."

It was developed at the hearing before the board that the matter of the political activities of appellant and his subordinates in the Warren office was brought to the attention of the Secretary through an affidavit made on April 29, 1939, by Blanche O. Alexander, a resident of Warren, who was appointed a provisional employee, as a Junior Interviewer, in November, 1937, and who, on November 10, 1938, was dismissed in order to reduce the personnel. It is suggested by counsel for appellant that because the Secretary failed to take action until some months after the filing of this affidavit in his office, and appellant's certificate of final appointment was issued in the meantime, his action should not be sustained. We think the following excerpt from the opinion of the board indicates it made a correct disposal of this contention:

"A considerable volume of testimony was given in an effort to impugn Miss Alexander's motives in making the affidavit referred to as Exhibit No. 2, and much was made of the fact that action in relation to Mr. Hawkes was not taken for a considerable number of months after the affidavit was originally made. Whether or not the Bureau or the Secretary acted with all possible dispatch in arriving at a determination of whether or not drastic action should be taken in relation to Mr. Hawkes, and whatever may have been Miss Alexander's motive in making the allegations in her affidavit, the

question for the board to determine is, in relation to the affidavit and Miss Alexander's testimony, solely as to whether her allegations are true or false, and if true, whether the conduct described on the part of Mr. Hawkes was sufficient grounds for his removal by the Secretary."

We assume that the legislature of 1936, in establishing a system of unemployment compensation with offices all over the state, intended, in good faith, to prevent, by the inclusion of Section 208, entitled "Civil Service; Selection of Personnel" etc., this new branch of the State Government from being used for the creation of a "spoils system," to which appointments would be made as rewards for political activities, with the resulting evils of inefficiency, corruption of the electoral franchise, and political assessments. Civil service laws are primarily designed to eradicate the system of making appointments chiefly from political considerations, and in its place to establish a merit system of fitness and efficiency as the basis of appointments. Instead of the uncontrolled will of the appointing officer, competitive examinations are required and discharges or removals may be made only for a just cause and not upon religious or political grounds. Freedom from obligation to contribute to any political fund or to render any political service is a principle of civil service laws which necessarily carries with it the corollary that no person in the service has any right to use his official authority or influence to coerce the political action of any person or body: American Jurisprudence Vol. X. pp. 921-922.

Condonation by the department, board, or the courts, of such political activities, as the testimony upon this record shows appellant engaged in during a partisan political campaign, would tend to make a farce out of the legislation under which he received his appointment.

Appeal dismissed.