**American Federation of State, County and Municipal Employes v. Bucher**

*Miriam L. Gafni*, for plaintiffs.

*Paul Rucci, Assistant City Solicitor*, for City of Philadelphia and George Bucher, defendants.

*David Marion*, trustee ad litem for other parties in interest, pp.

SPORKIN, *J.*, April 7, 1976—This case is presently before the court, after months of litigation, upon the motion of all counsel for approval of a stipulation in compromise and settlement of this entire controversy.[1] As is the case with any attempt to settle a case by stipulation rather than by a

---

1. Hereinafter the present "provisional" or "temporary" unskilled laborers of the City of Philadelphia who brought this suit through their collective bargaining representative, the American Federation of State, County and Municipal Employees, AFL-CIO, District Council 33, will be referred to as "plaintiffs." The *party* defendants will be referred to collectively as "the city." The applicants for *permanent* unskilled laborer positions with the city, whose names appear on the present "lottery list" and on whose behalf David Marion, Esq., has been appointed trustee by this court, will be referred to as "those represented by the trustee."

praecipe to settle, discontinue and end the matter, the court is called upon to give its sanction or approval to the terms agreed upon by the litigants. As chancellor, the writer must, consequently, review the terms of the compromise proposal, to assure that such settlement is a bargained-for agreement, forged out of the recognition by the litigants that obstacles exist, in the nature of evidentiary problems or legal precedents contrary to that party's position, which *could* result in a denial of the merits of the claims or defenses asserted by each of them. Our approval is thus sought upon the assertion that the parties have recognized the potential problems confronting them respecting their arguments and necessary proofs and have adjusted their claims accordingly.

In the interests of informing those represented by the trustee of the process by which the present proposal was formulated, then, we shall attempt to summarize the arguments which have been presented by plaintiffs, the city, and those represented by the trustee, and their potential problems which have motivated this settlement. On March 15, 1976, at one of the hearings in this matter called to consider the prayer of the trustee that one of the defendants, Lewis Taylor, the Personnel Director of the City of Philadelphia, be held in contempt (for refusing to comply with a February 11, 1976, order of this court to terminate the employment of plaintiffs without prejudice to their right to continue to press their arguments for preferential certification from any "eligibles list" eventually established for certification regarding *permanent* employment), the city solicitor argued on behalf of defendant, Taylor, that he, Taylor, did not have the authority under the city charter or the civil service regula-

tions to dismiss these employes. Thus, the city solicitor argued, the attachment for contempt should be quashed.

Furthermore, the city asserted that under this same rationale the entire suit should be dismissed because of the failure of plaintiffs to include those occupying the positions of heads of the streets and water departments or their delegates as "appointing authority" for unskilled laborers as party defendants in this action, arguably amounting to a failure by plaintiffs to join an indispensable party. In support of its motion to dismiss the suit, the city cited the opinion of our Pennsylvania Supreme Court in the Schwartz Case, 445 Pa. 373, 284 A. 2d 765 (1971).

The said motion was not ruled upon by the court; following a discussion with counsel concerning the issues involved in the motion and in the entire case as well, meaningful settlement negotiations were instituted, and all counsel indicated their belief that an accord could be reached as to final resolution of all claims presented in this controversy. Thus, such motion to dismiss was taken under advisement by the court and, indeed, a settlement proposal *was* received, in the form of the present stipulation, within a week thereafter. At this point, then, the motion to dismiss remains pending, as does a motion by the trustee to hold plaintiffs not entitled, as a matter of law, to gain the preference sought. In determining whether to approve the stipulation, the first question to be examined, against the background of conditions for approval of a settlement by stipulation as outlined above, will be that posed by the said motion of the city to dismiss.

The Schwartz Case does, indeed, contain lan-

guage to the effect that it is only the "appointing authority" who, or which has the power to dismiss an employe; and, since the *departments of streets and water* were the agencies which actually appointed these provisionals, it is argued that the *personnel director,* Taylor, not being the "appointing authority" (see civil service regulation 2.03), is without power to carry out the order of the court above referred to.[2] Further, if that argument is found meritorious, those represented by the trustee would be similarly hard-pressed here to defeat the argument that the entire claims should be dismissed.

Upon a close reading of the Schwartz Case, however, it becomes apparent that a countervailing argument *does* exist, so that the contempt remedy, as well as the ultimate solutions, claims and positions sought to be vindicated by the parties other than the named defendants are not hopeless. In the Schwartz Case, the real question confronting the court involved an attempted *dismissal* by the personnel director of a civil service employe whose *appointment* had been proper, but who had allegedly cheated on an examination taken for *promotion* within the department.

The court there ruled, first, that *dismissal* may be effectuated only by the "appointing authority." We are, of course, bound by the opinion of Mr. Justice O'Brien in Schwartz, but we believe that an argument does exist to the effect that the present situation before us is distinguishable from the circumstances that generated the Schwartz holding. Here, we are faced with a question of the legality of

2. The civil service regulations will hereinafter be cited as "Reg, _____."

continued employment of "provisional" employes. Section 7-401(k) of the city charter and regs. 12.01, 12.011 and 12.02 state that "provisionals" cannot be employed, as in the instant case, for more than 90 days within a 12-month period. Even if a new "eligibles list" has not been "established" within the 12-month period, the employment of "provisionals" must still be terminated unless the personnel director, on request of the appointing authority, authorizes continued employment of such "incumbent" workers in their positions, as "temporaries"; but even in this latter eventuality, the "temporaries" cannot thereafter remain in their positions, as they have in the present case, for more than six months.

Accordingly, the argument exists that what is being sought *here*, as opposed to what was attempted in Schwartz, is to have the personnel director carry out his ministerial duties of "establishing" an eligibles list and removing the temporaries (plaintiffs) from the payroll; those represented by the trustee would urge that it is not a "dismissal" which is being sought but, rather, a "termination." (We do not go forward to actually determine the merits of the relative arguments of the parties as to this or any other issue in this opinion, because what we are asked to do here is to consider and approve a compromise involving the *withdrawal* of all of these claims and arguments; to decide the *merits* of same would obviously be a misconstruction of our responsibilities.)

Returning to the question of the viability of the Schwartz decision as to a basis for proposed dismissal of this entire controversy, as argued by the city, it is pertinent to scrutinize the argument presented by the city and rejected there, that the personnel

director does have authority to remove an employe from the payroll if his *appointment* or *employment* is improper. Section 7-302(2) of the city charter and reg. 11.12 give the power to the personnel director to remove from the payroll any person who has been appointed or employed without compliance with civil service regulations. Thus, those represented by the trustee would argue, where the term of employment of "provisionals" or "temporaries" has expired under regs. 12.01, 12.011 and 12.02, as here, it is the duty of the personnel director, under section 7-302(2) of the city charter and reg. 11.12, to remove that person from the payroll of the city. See formal opinion no. 66 of the city solicitor. This argument was rejected in Schwartz simply because, *there,* it was not the *appointment* or the *employment* of Schwartz that was improperly gained by the alleged cheating; instead, it was the *promotion* sought by Schwartz that was under review; and the authority to remove an employe from the payroll does not extend to alleged improprieties in the application for a *promotion.* It is, therefore, manifest that the argument that defendant, Taylor, *does* have the power to carry out our order of February 11th *here,* by dint of the authorities cited above, is *not* foreclosed by the Schwartz decision. This is not to say, though, that those represented by the trustee prevail on this argument for a contempt citation against Taylor, but only states that the argument would be one of first impression in our courts.

Even if those represented by the trustee *were* to triumph as to the question of contempt, however, this would really have no effect upon the open questions as to the ultimate merits involved here, because, as noted heretofore, even the order to termi-

nate the employment of plaintiffs which is sought to be enforced by contempt was made expressly conditional upon the reservation of plaintiffs' rights to continue to pursue their claims to rights of preference on a permanent eligibles list.

Turning next to the motion of the city solicitor to dismiss for failure to join an indispensable party, we do not believe that the argument for dismissal is so plainly meritorious as the city asserts. The three central questions involved in this case are (a) whether the permanent eligibles list must give preference to plaintiffs; (b) whether the *method* and *motivation* for the provisional and temporary appointments were improper; and (c) whether the personnel director must terminate the employment of plaintiffs and remove them from the payroll under section 7-302(2) of the city charter. As to the latter question, we have discussed the viability of *both* arguments of those represented by the trustee and defendants above. With respect to the former argument, however, regarding the mechanics of "establishing" an eligibles list, additional discussion is necessary.

Under section 7-401(k) of the city charter, it *is* the personnel director who is charged with the responsibility of drawing up a permanent eligibles list; accordingly, it is plain that the proper party has been named as defendant here. The claim of plaintiffs, however, particularly as it has developed in the prior progress of the case to its present point of involving assertions by both plaintiff *and* the city that the city may choose *any* name from the eligibles list for permanent unskilled laborer employment, involves far more esoteric questions of interpretation than simply deciding who has the power to *draw up* the eligibles list; we are now

called upon to decide also how the list is to be *administered.*

Regulation 10.061 states that eligibles lists for unskilled laborers shall be established by the personnel director for use in "certification" of persons on that list. The "appointing authority" prepares a requisition for certification to the number of job placements needed: Reg. 11.01. The personnel director then *certifies* the names of the two persons highest in *"rank"* (Reg. 11.02), from whom the appointing authority chooses one for appointment. Veterans are given preference in rankings for the purpose of certification: City Charter 7-401(d). See also City Solicitor's Opinions, 1954, p. 125; memorandum of legal advice no. 2339.

It is at this stage of the procedure that serious conflict exists, between those represented by the trustee on one side and plaintiffs and the City on the other, as to the meaning of Reg. 10.063. That regulation states that the appointing authority may *appoint any* person as an unskilled laborer, who has passed the qualifying fitness tests. Plaintiffs and the city argue that the clear meaning of this language is that the appointing department, presented with an eligibles list having, as here, some 8,000 names on it, may appoint number 7,500 before it appoints number 1.

Those represented by the trustee would argue, to the contrary, that the scope of the *appointment* powers, and of any regulations dealing with appointment (such as Reg. 10.063) is by definition narrowed by the regulations reviewed earlier, which provide that the appointing authority *appoints* from a "sub-list" of *two* names *"certified"* to it by the personnel director, and those *two* names are the first in "rank" at the head of the eligibles

list. Moreover, those represented by the trustee assert, even if the reading given Reg. 10.063 by plaintiff and the city is *correct,* such a provision would be void as in conflict with the basic purpose of the Civil Service Regulations. As will be seen, the lines of argument are sharply drawn on this point, and the question is so close that neither side may be secure in its argument; it is in such circumstances that we are inclined to approve a compromise.

The purpose of the Civil Service Regulations is stated, in Reg. 1.01, as the establishment of a *merit* system of appointment and promotion in civil service jobs. See, also, Hawkes v. Unemployment Compensation Board, 145 Pa. Superior Ct. 465, 472, 21 A. 2d 485 (1941). The concept of *merit* is translated into a series of regulations establishing *competitive* examinations for positions. Hence, the regulations often speak of "rank" on eligibles lists. Under Reg. 10.062, however, applicants who pass the physical examination requirement relative to unskilled labor are placed on an eligibles list *without regard* to their *rank* or scores on that test. Thus, the regulations *seem* to carve out an area where "merit" appointment is *not* sought; and, indeed, one might successfully argue that skill is by definition not involved in "unskilled labor," so that "merit" hiring has no place there.

The countervailing interpretation, though, is that Reg. 11.02 still requires consideration of *rank* on eligibles list as part of the certification process (with *no* specific exemption for unskilled laborers) and the plain import of Reg. 11.02 is thus that "rank" on unskilled eligibles lists involves simply "certifying" the top two names as they *appear* on the list. The names of applicants should be randomly *placed* on eligibles list (e.g., by lottery, as

here), those represented by the trustee would assert, or they may be placed there in order of application (e.g., a sign-up list as originally contemplated by the city, but one that included no "earlybirds"), Reg. 10.062, but once the list is *established* the names must be *certified* in *order*. As is obvious, between those represented by the trustee and the city, the court might well hold that the "number one" name on the eligibles list need *never* be certified. If, as here, the compromise *assures* them that in *future* certifications the list will be exhausted *in order,* then those represented by the trustee have gained a highly significant concession in the compromise, and we are, consequently, inclined to approve it as a most reasonable exercise of discretion by the trustee and fair to the interests of all concerned.

Additionally, we have previously discussed the open question here as to whether these provisionals and temporaries will be *dismissed,* or *terminated,* due to the expiration of the 90-day/six-month statutory period of employment. If such removal from the payroll amounts to a "layoff" then the names of the provisionals and temporaries would, under the regulations, be placed on a "layoff list," and under Reg. 11.02, the *layoff list* has priority over even the eligible list for certifications.

This result might be so in conflict with the provisions that provisional or temporary employment does not confer any rights to permanent employment (Regs. 12.01, 12.011, 12.02) as to prevent the court from accepting such a construction but it is, nonetheless, an argument properly to be considered by those represented by the trustee as a barrier to victory on the merits, to be weighed strongly in choosing to accept a negotiated settlement of this

matter, rather than pursuing arguments on the merits to a conclusion. If an ultimate conclusion were reached *denying* the arguments advanced by the trustee, the result could as well have *long-term* effects as a binding precedent.

As to whether either the method or motivation of the provisional or temporary appointments was improper, we emphasize that there is no *evidence* before this court such as would answer this question for either side. We will not, therefore, assume that such charges could have been proved, nor will we presume that they could have been defeated.

In sum, we do not, as stated heretofore, believe our proper function to include deciding on the merits at this point. Further, the question before us today is *not* whether we believe that one side *might* have such possibilities of eventually prevailing on the merits as to make us loathe, were we they, to compromise our arguments; as long as *no* party's position is *clearly* correct, the *true* inquiry at this stage is as to whether this stipulation is *reasonable* for all points of view. As detailed above, we believe that the questions here are close ones and the rights to recovery less than clear (in fact, as discussed, there are serious drawbacks to the arguments advanced by all parties), and the compromise is a workable one.[3] We will not, presented with a reasonable solution to this matter, even attempt to substitute our *discretion* for that exercised by the

---

3. We must also add that the ambiguities in the relative positions of the parties on the merits are, in large part, generated by a lack of consistency and clarity in the language of the civil service regulations, making for unnecessary difficulty in the interpretation thereof. We can only hope that this imprecise wording of the regulations will be remedied, if possible, so as to avoid future disputes such as that which has arisen here.

parties here; instead, we will simply approve the proposal subject to the modification that this court will maintain jurisdiction of the cause and of the parties so as to assure compliance with its terms.

Paragraph 4 of the *proposed* form of order would have the complaint dismissed. If this court is to approve the stipulation, that provision must be amended to read:

"4. That this court shall retain jurisdiction of the cause to assure compliance with the foregoing Stipulation."

## CONCLUSIONS OF LAW

1. The stipulation proposed by and between the parties here, in compromise of this controversy, will benefit all litigants and is born of the fact that no arguments of any litigant are so clearly meritorious as to be dispositive of the matter.

2. The compromise is a reasonable one and should, under these circumstances, be approved by the court.

## DECREE

And now, April 7, 1976, upon the request and with the agreement of all counsel, and for the reasons stated by counsel in their common agreement dated March 22, 1976, it is hereby ordered and decreed that:

1. The persons represented by plaintiff shall immediately be certified and given permanent appointments to the position of unskilled laborer in the municipal civil service.

2. That upon appointment as above directed, defendants shall declare the eligible list compiled as a result of the lottery conducted by the American Ar-

bitration Association to be the official eligible list, for a period of at least two years from the date of this decree, for the position of unskilled laborer and, thereafter, all certifications and appointments to the position of unskilled laborer, whether permanent, provisional or otherwise, including any new appointment necessary to replace a person appointed under the provisions of paragraph 1 above, shall be made from the said official eligible list and in the order established by the lottery drawing, subject only to statutorily-mandated veterans' preference.

3. That during the two years next following the date hereof, the number of unskilled laborer positions in the municipal civil service shall not be reduced below 318 positions and there shall at all times be at least 318 filled positions.

4. That this court shall retain jurisdiction of the cause to assure compliance with the foregoing stipulation.